IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

16 MAR 22 PM 3:55

CLERK-ALBUQUERQUE

| | |
|---|---|
| MILOSLAV MULLER<br><br>    Plaintiff,<br><br>v.<br><br>DONNA PEARSON-CHAVEZ, in her individual capacity as The Islands HOA manager<br><br>GLORIA NIEVES, in her individual capacity as The Islands HOA president<br><br>DOROTHY ROMAN, in her individual capacity as former The Islands HOA President;<br><br>ASSOCIA CANYON GATE REAL ESTATE SERVICES, AAMC;<br><br>THE GROUNDS GUYS OF RIO RANCHO;<br><br>SUNLAND ASPHALT;<br><br>and JOHN DOES NO. 1-10, fictitious names of other persons or businesses who directly participated in the planning or execution of the relevant facts of violation of rights of Plaintiff,<br><br>    Defendants. | **COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br>16 CV 217 LF/SCY |

## COMPLAINT

Plaintiff, Miloslav Muller, herein states his complaint of racially-motivated refusal to provide contractual services on the grounds of intentional and willful retaliation for his lawful opposition to what he reasonably believed was discriminatory treatment of African-Americans by The Islands HOA Board Members, in violation of Section 1981 (42 U.S.C. § 1981), and

1

damages to property and health in violation NMSA 37-1-4. Plaintiff has first-hand personal knowledge of facts pertinent to this complaint, and he states the following:

## JURISDICTION AND VENUE

1. This action arises under Section 1981 (42 U.S.C. § 1981), and under NMSA 37-1-4. This Court has jurisdiction over this Complaint because it arises under the laws of the United States and under laws of the State of New Mexico.

2. Venue is appropriate in this court because all Defendants do business in Sandoval and Bernalillo County, New Mexico, and a substantial part of the acts or omissions giving rise to this lawsuit took place within this judicial district.

3. The Sandoval County and Bernalillo County is where the majority of actions complained in the present case took place and where records relevant to the unlawful practices are kept.

4. With respect to Plaintiff's claims based on Section 1981 (42 U.S.C. § 1981), this Court has subject-matter jurisdiction over these claims pursuant to 28 U.S.C § 1331; and this court has proper venue pursuant to 28 USC § 1391.

5. Supplemental jurisdiction over the Plaintiff's pendent state law claims under Section 37-1-4 is conferred by 28 U.S.C. 1367.

6. All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has in good faith attempted to resolve these issues with Defendants, but with no success.

## PARTIES

7. Plaintiff Miloslav Muller is the owner of the townhouse unit number 634, located at The Islands at Rio Rancho (hereinafter "The Islands") adult retirement community. He as the owner of the above-cited real estate residential property, by the Islands By-Laws, he has a

contractual relationship with the Islands at Rio Rancho Homeowners Association ("HOA") to provide, among other things, a maintenance of the common areas of The Islands.

8. Donna Pearson-Chavez is The Islands Manager with contractual duties to manage the affairs of the Association. She is an employee of Associa Canyon Gate Real Estate Services, AAMC.

9. Gloria Nieves is The Islands HOA Board Member, and she serves as a President of The Islands HOA.

10. Dorothy Roman was The Islands HOA Board Member, and until February 2015, she served as a President of The Islands HOA .

11. The Islands at Rio Rancho Homeowners Association was formed in 1987 as a non-profit, charitable corporation in the State of New Mexico for the common benefits of the owners and residents of one hundred and seven townhouses units built on The Islands' premises.

12. In accordance with The Islands' By-Laws, the Board of Directors of the Islands at Rio Rancho (hereinafter "the Board of Directors") can employ the services of professional manager to manage the affairs of the Association and can delegate to the manager any of its power to the extent not inconsistent with the federal laws and the laws of the State of New Mexico.

13. Therefore, in accordance with Title II of the Civil Rights Act and the laws of the State of New Mexico, The Islands at Rio Rancho Homeowners Association, Inc. is a "public accommodation" establishment that offers or provides its services to the public.

14. Associa Canyon Gate Real Estate Services (hereinafter "Associa") assumed its contractual managerial duties at The Islands on August 1, 2011.

15. Associa is a professional management company specializing in homeowners

association and condominium management.

16. According to its website, Associa is providing community association management services to more than four million residents in thousands communities across the U.S., Canada and Mexico.

17. Furthermore, Associa advertizes its services on internet, or is sending letters or advertisement brochures via U.S. Postal Services.

18. Therefore, in accordance with Title II of the Civil Rights Act and the laws of the State of New Mexico, Associa is "public accommodation" establishment that offers or provides its services to the public.

19. The Grounds Guys is a private company located in Rio Rancho, New Mexico. It advertises on internet its professional services related to lawn and trees maintenance.

20. Therefore, in accordance with Title II of the Civil Rights Act and the laws of the State of New Mexico The Grounds Guys is "public accommodation" establishment that offers or provides its services to the public.

21. Sunland Asphalt is a private company located in Albuquerque, New Mexico. It advertises on internet its professional services related to road repairs and maintenance.

22. Therefore, in accordance with Title II of the Civil Rights Act and the laws of the State of New Mexico, Sunland Asphalt is "public accommodation" establishment that offers or provides its services to the public.

## FACTS & BACKGROUND

23. This civil action is based on "continuing violation doctrine" of a racially-motivated retaliation claim, that dates back to April 14, 2009. On that day, Plaintiff reported to Ms. Cecilia Owens, Pesticides Enforcement Manager, the New Mexico Department of Agriculture

4

(hereinafter "NMDA"), an environmental and public health incident that took place at The Islands' premises few days earlier on April 8, 2009.

24. Among other things such as off-target drift contamination of a large adjacent lake surrounding The Islands with carcinogenic pesticide SPEEDZONE that soaked through the lake's significantly damaged plastic liners into the Albuquerque aquifer that provides drinking water for over half million of the New Mexico residents, Plaintiff also reported to Ms. Owens a toxic exposure of an African-American male employee of Shamrock Landscaping spraying from a backpack sprayer the above-mentioned pesticide without any personal protective equipment during high winds exceeding 30 mph, with direct knowledge of The Islands' manager Lorna Fossenier, and other members of the Board of Directors of the Islands (all Caucasians), who intentionally and willfully failed to take any safety precaution to prevent this incident as required by law.

25. For example, a digital photo taken by Plaintiff on April 8, 2009 at 3:44 p.m., showed the affected African-American male spraying toxic pesticides from his backpack sprayer at The Islands' lake shore during high winds, and without any protective equipment.

26. On April 15 and 16, 2009, the NMDA Inspector Baca formally investigated the incident (Case No. 09-14). The Inspector interviewed the affected African-American employee and his supervisor Mr. Gary Tansey, the owner of Shamrock Landscaping, who had a landscaping contract with The Islands.

27. The Inspector also interviewed Plaintiff who provided him with a written statement about the incident. In addition, the Inspector interviewed The Islands' manager Lorna Fossenier and her husband Mr. Jerry Fossenier, who was at those times a member of the Board of Directors of the Islands.

28. The NMDA investigation revealed that the affected African-American employee of Shamrock Landscaping was not aware that he was spraying toxic substances harmful to human health, to the aquatic environment of the lake, and that he was unwillingly exposing to himself with significant dose of carcinogens.

29. Furthermore, the NMDA investigation revealed that the affected African-American employee was not trained at all to commercially apply toxic substances such as pesticides, in direct violation of the U.S. Occupational Safety and Health Administration ("OSHA"), the U.S. Environmental Protection Agency ("EPA"), and The State of New Mexico laws and regulations.

30. In addition, the NMDA's investigation revealed that the Board of Directors of the Islands were responsible for this malfeasance by awarding a landscaping contract to a non-licensed company Shamrock Landscaping, who used an unsuspecting African-American temporary employee of his company to apply toxic substances without any training or knowledge as required by the OSHA's, the EPA's, and by the State of New Mexico's laws and statutes.

31. It is also important to state that during the previous year 2008, the owner of Shamrock Landscaping, Mr. Gary Tansey, in a bad-faith used another unsuspecting African-American temporary employee of his company to spray toxic pesticides from a backpack sprayer without any personal protective equipment, without a proper training, and without the required Shamrock Landscaping pesticides license as required by law.

32. At the conclusion of the investigation, the NMDA ordered Mr. Tansey that he and anyone else in his company needed a license before they could apply any pesticide for hire, and he was ordered to immediately cease any and all pesticide applications for customers of his business Shamrock Landscaping until he and his employees had proper licensing in place.

33. As a direct result of the NMDA's investigation the above-cited incident that implicated the owner of Shamrock Landscaping, and The Islands HOA Board Members, among other things, in the above-cited racially-motivated wrongdoings, Shamrock was forced to cease any applications of pesticides at The Islands for the next few months of the growing season, and the affected African-American employee was not any longer employed by Mr. Tansey.

34. Therefore, admissible evidence of the record shows that the Board of Directors of the Islands together with Mr. Tansey, conspired with each other for improper purpose of intentional and willful violation of the civil rights of the affected African-American temporary employees of Shamrock Landscaping.

35. As a direct result of Plaintiff's lawful opposition to racial discrimination of African-American employees mentioned in paragraphs above, since his report of the above-mentioned incident to the NMDA in 2009, the Board of Directors of the Islands conspired among each other, and they subjected Plaintiff to a pattern of retaliatory acts and omissions that continue to these days.

## FIRST CAUSE OF ACTION

### Retaliation in Violation of Section 1981 (42 U.S.C. § 1981) by Refusing to Provide Contractual Services

<u>Issue One</u>

36. On June 1, 2011, The Islands Homeowners Association Board Members (hereinafter "HOA") awarded landscaping contract to The Grounds Guys. On the following day, during high winds, this landscaping company, in direct violations of federal and state environmental and public health laws, sprayed toxic carcinogenic pesticides on The Islands' premises, including the lake shore.

37. This illegal, off-label application caused pesticides off-target drift that killed

hundreds of fish; poisoned migratory waterfowl nesting on the lake; contaminated residential structures of The Islands' residents and thus recklessly exposed them to carcinogens; and contaminated Albuquerque aquifer through multiple-torn lake plastic liners. Albuquerque aquifer is source of drinking water to over half million of residents of New Mexico. Detrimental impact on environment is captured on numerous digital photos taken by Plaintiff at the time of the incident, such as photo number P1120398; or P1120485.

38. During the following years, The Grounds Guys' improper landscaping maintenance at The Islands, including improper application of toxic pesticides and failure to properly irrigate, directly caused die-off of over forty trees and bushes.

39. The Grounds Guys have contractual duty to keep The Islands' landscaping in good shape. However, they recklessly and deliberately failed to do that. As a direct result, values of residential properties of residents of The Islands, including the Plaintiff's townhouse, significantly decreased, causing monetary harm to Plaintiff and other residents.

40. Furthermore, despite Plaintiff's numerous requests to The Islands Manager, Donna Chavez, The Grounds Guys are unnecessary continuing to spray toxic pesticides at The Islands' common property and therefore, needlessly exposing residents to toxic carcinogenic pesticides.

41. They deliberately do that, with approval from Donna Chavez, Manager, and with approval from The Islands HOA Board Members, without notifying residents where pesticides were applied. By doing that, they deliberately expose residents and their pets to harmful chemicals with a long-term detrimental health effect.

42. In the past, on numerous occasions Plaintiff contacted Manager Donna Pearson-Chavez with a request to cease application of pesticides close to his property because of health concern, but no avail.

43. For example, Manager claims that pesticides applied by The Grounds Guys such as Prosecutor, are very safe and do not cause any harm to people. However, her statement is in direct contrast with the Prosecutor's Material Safety Data Sheet.

44. To make this subject more concerning is fact that Manager Donna Pearson-Chavez is deliberately refusing to resolve this issue, including her refusal to communicate on this subject with Plaintiff.

45. This situation is exacerbated by fact that Manager Donna Pearson-Chavez is using employees of The Ground Guys as a proverbial "cat's paw" to harass and to intimidate Plaintiff to extend of appearance physical violence, as it has happened on a few occasions in the past.

B.  Issue Two:

46. In August 2011, The Islands HOA Board Members awarded managerial contract to Associa Canyon Gate Real Estate Services, AAMC (hereinafter "Associa"). About nine months later, Associa, as a manager for The Islands, contracted Sunland Asphalt to provide for The Islands so called "Asphalt Project" for the amount of $22,000.

47. On May 17, 2012, Sunland Asphalt sprayed all roads at The Islands with hot asphalt. However, they sprayed it without cleaning the road, and without properly filing cracks in the road surface, in direct violations of the company's policies and established industry standards.

48. On one occasion, they directly sprayed asphalt over gypsum run-off on the road that originated from one residency. In addition, they failed to take proper precautions, and they over-sprayed previously clean concrete curbs, including multiple residential numbers in front of residencies. Detrimental impact of this reckless negligence is captured on numerous digital photos taken by Plaintiff shortly after asphalt spraying, such as photo number P1160088; or

P1160217.

49. On the same day, Plaintiff in good-faith attempted to correct this situation by talking to The Islands HOA President Dorothy Roman, including Sunland Asphalt foreman, but no avail. As a matter of fact, the freshly applied asphalt coat started to crack and peel-off on many road surfaces on the next day, as a direct result of reckless failure of Sunland Asphalt managers to properly prepare the road surface.

50. It is noteworthy to say that few weeks later, Sunland Asphalt returned to repair parts of the damaged road, but mostly in vicinity of residencies of some HOA Board Members. Rest of the road was not repaired, giving appearance of the roads of slums in the third world countries.

51. Sunland Asphalt had contractual duty to provide contractual services to The Islands residents in accordance to established company and industry standards, but they recklessly and deliberately failed to do that. As a direct result, the previously nice road in this premium residential community of The Islands became damaged and unsightly, thus its appearance decreased value of residential properties, including the Plaintiff's townhouse.

C. Issue Three:

52. The Islands HOA Board Members (President, etc,) and Associa management have contractual duty to provide services to owners of The Islands' townhouses. However, circumstantial evidence strongly suggests that they are deliberately and in bad-faith failing to provide these services, thus causing significant devaluation of values of residential properties, including the Plaintiff's townhouse.

53. Instead of making reasonable precautions and to timely resolve problems with contractors listed in paragraphs above, there is strong appearance that they are covering up

contractors' significant wrongdoings.  When The Islands residents objects or even question The Islands HOA management reckless behavior and waste of residents' money on HOA "pet projects", including enormous waste of drinking water for irrigation caused by mal-adjusted sprinklers, they became target of retaliation.

54. For example, in early March 2015, Plaintiff contacted Manager Donna Pearson-Chavez, in writing requesting to trim the overgrown cottonwood tree in front of his residency.  This large shade tree adds significant value to the Plaintiff's townhouse.  In his e-mail to Ms. Pearson, he stated that the tree must be trimmed in dormant stage to prevent potential damages to the tree as per professional arborist recommendation, and that he want to be personally present when the tree will be trimmed.

55. Instead of providing timely services, Manager Pearson intentionally and in bad-faith waited until April 27, 2015, when the tree was in full growth and blooming.  Then she sent a tree trimming company crew to trim the blooming tree that could cause a long-term damage to the tree.

56. On the same day, manager Pearson ordered the tree trimming company to trim a large ornamental shade tree at the road, located about fifty yards from Plaintiff's residency, when the tree was in full growth.  The trimming crew made over fifty cuts to that tree, potentially damaging it in the long run by making it prone to diseases.

57. To make things more complicated, manager Pearson waited to trim those two trees when there was significant rainfall previous few days earlier, thus making water soaked tree bark more prone to damages by climbing crew and cuts into wet branches.

58. In summary, The Islands HOA Board Members and managers have contractual duty to provide residents of The Islands with proper maintenance services.  Instead, taking evidence

as a whole, there is strong appearance that HOA intentionally fails to do that, resulting in significant devaluation of residential properties at The Islands, including Plaintiff's townhouse.

### THE PLAINTIFF'S INJURIES

59. Defendants' racially-motivated acts or omissions have caused significant tangible damage to the Plaintiff in excess of $50,000 related to devaluation of his property, including significant harm to his health by exposure to toxic pesticides.

60. As a result of the Defendants' retaliatory actions, Plaintiff was deprived of his statutory protected civil rights under Section 1981 (42 U.S.C. §1981).

61. As a result of the Defendants' retaliatory actions, Plaintiff was deprived of his rights guaranteed him under New Mexico laws.

62. As a result of the Defendants' defamatory actions, Plaintiff was deprived of his Constitutional rights under the First Amendment to the United States Constitution

63. The Defendant's actions inflicted severe emotional distress, anguish, and humiliation to the Plaintiff, resulting in irreparable harm to his health and well-being.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court enter a judgment including, but not limited to:

A. Compensatory damages for devaluation of the Plaintiff's property in the amount of at least $50.000;

B. Compensatory damages for violation of the Plaintiff's statutory protected civil rights under Section 1981 (42 U.S.C. §1981) in the amount that is fair, just and reasonable;

C. Compensatory damages for infliction of emotional injuries;

D. Compensatory damages for harm to Plaintiff's health by toxic pesticides;

D. Exemplary and punitive damages for intentional retaliation;

E. Attorney's fees and cost;

F. Court cost, deposition cost, expert witness cost, and jury cost;

G. All other appropriate relief that is fair, just and reasonable under the circumstances.

## JURY DEMAND

64. Plaintiff hereby demands a trial by jury for all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedures.

Respectfully submitted,

/s/ M. Muller

Miloslav Muller, Pro se
634 Eastlake Drive
Rio Rancho, New Mexico 87124
Phone: (505) 892-9188

Date: MARCH 22, 2016

DECLARATION OF MILOSLAV MULLER

I, Miloslav Muller, pursuant to 28. U.S.C. § 1746, declare under penalty of perjury that I have a personal first-hand knowledge of facts listed in this Complaint, that information in this submission is true and correct, and that this declaration was executed on March 22, 2016, in Rio Rancho, New Mexico.

*/s/ M. Muller*
Miloslav Muller, Pro se
634 Eastlake Drive
Rio Rancho, New Mexico 87124
Phone: (505) 892-9188